UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RONALD FILLYAW, JR.,

    Plaintiff,

v.                                                           Case No. 20-CV-827

ALLAN TENHAKEN, *et al.*,

    Defendants.

---

RONALD FILLYAW, JR.,

    Plaintiff,

v.                                                            Case No. 20-CV-861

OFFICER STEELOW, *et al.*,

    Defendants.

---

### DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronald Fillyaw, Jr., who is incarcerated and representing himself, originally brought two cases under 42 U.S.C. §1983: a false arrest claim (Case No. 20-cv-827) against defendants Milwaukee Police Officers Allen Tenhaken and Thomas Ozelie and excessive force claim (Case No. 20-861) against defendants Milwaukee Police Officers Charles Steelow and Claudio. On motion of the defendants, I consolidated these two cases. (ECF No. 30.)

Before me now are the defendants' motion for summary judgment. (ECF No. 33.) The parties have consented to the jurisdiction of a magistrate judge. (Case No. 20-cv-827, ECF Nos. 6, 15; Case No. 20-cv-861, ECF No. 12.) For the reasons stated below, I will deny the defendants' motion in part and grant it in part. I will also reverse myself and sever the two cases.

## FACTS

*Fillyaw's Encounter with Tenhaken and Ozelie*

1. *Fillyaw's Version of Events*

According to plaintiff Ronald Fillyaw, Jr., in the evening of February 9, 2018, he used his key to let himself into his girlfriend's apartment building. (ECF No. 41 at 1.) Fillyaw asserts that he went right up to his girlfriend's third floor apartment, where after a few minutes, he and a female friend decided to run to the corner store to get supplies for a party. (*Id.*) They walked down the hallway, which Fillyaw notes was unoccupied, out the door, and into the stairwell. (*Id.*) In the stairwell, they ran into another friend, who was male. (*Id.*) They stopped to chat, and at that point, defendant Allan Tenhaken, a Milwaukee police officer, walked through the hallway door into the stairwell from the third-floor hallway. (*Id.*)

Tenhaken asked Fillyaw and his two friends whether they lived in the building. Fillyaw and his female friend responded that they did not live in the building, whereas the male friend informed Tenhaken he did live there. (*Id.*) Tenhaken then asked Fillyaw's male friend what was in his pockets, and the male friend showed him his phone. (*Id.*) Fillyaw's female friend told Tenhaken she had her gloves in her pockets. (*Id.*) Tenhaken did not ask

2

Case 2:20-cv-00861-NJ   Filed 03/30/22   Page 2 of 19   Document 27

Fillyaw anything. (*Id.*) Fillyaw then asked his friends if they were ready to continue on to the store, and they went down the steps out the door. (*Id.*)

As Fillyaw was leaving the building, Tenhaken radioed his partner, defendant Thomas Ozelie, also a Milwaukee police officer, to "grab the guy that's coming out an [*sic*] that he has something in his right hand pocket." (*Id.* at 2.) Ozelie then grabbed Fillyaw. (*Id.*) Fillyaw asked why he was restrained and informed Ozelie he was heading to the store. (*Id.*) Officer Tenhaken then approached Fillyaw and Ozelie and told Fillyaw to calm down because all they wanted to know was what in his pocket. (*Id.*)

At one point, Tenhaken grabbed on to Fillyaw's left arm and twisted it behind his back, causing Fillyaw to attempt to bring his arm forward. (*Id.*) Fillyaw admits he told the officers that he was not going to put his arm behind his back because he was in pain. (*Id.*) Tenhaken and Ozelie then lifted Fillyaw off his feet and slammed him face down into the snow. (*Id.*) Fillyaw states that he was not resisting arrest, but simply trying to maneuver so he could breathe. (*Id.*)

   2. *The Defendants' Version of Events*

Officer Tenhaken asserts that around 9:00 p.m. on February 9, 2018, he was inside an apartment complex on 32nd Street and Wells in Milwaukee, Wisconsin conducting a routine patrol in his capacity as a police officer with the Milwaukee Police Department. (ECF No. 36, ¶¶ 13-15.) Tenhaken states he was standing on the third floor when he observed Fillyaw, on a lower floor, holding a green cloth bag and showing an unidentified person the contents of that bag, which was "a clear plastic bag containing a green, plantlike substance." (*Id.*, ¶¶ 16, 17.) Tenhaken believed the plantlike substance to be marijuana. (*Id.*, ¶ 17.) Fillyaw then noticed Tenhaken and quickly put the green bag in his right front coat

3

pocket. (*Id.*, ¶ 18.) Fillyaw then walked towards the exit of the apartment building, at which point Tenhaken radioed down to his partner, Ozelie, informing him that he should stop Fillyaw because Tenhaken suspected he had drugs. (*Id.*, ¶ 19.)

Ozelie stopped Fillyaw. (*Id.*, ¶ 21.) According to Tenhaken, Fillyaw ignored several directives and attempted to flee. (*Id.*, ¶ 21.) Because Fillyaw was resisting so vigorously, Tenhaken and Ozelie attempted to physically restrain him, using a "control the head decentralization technique." (*Id.*, ¶¶ 22-24.) Tenhaken states that during the struggle he "felt what he believed to be a handgun in the Plaintiff's front right pocket." (*Id.*, ¶ 23.) Once Tenhaken and Ozelie had control of Fillyaw, Fillyaw continued to yell and physically resist up until he was placed in the transport vehicle. (*Id.*, ¶¶ 25, 30.)

The defendants state that once Fillyaw began resisting their commands, they had probable cause to arrest him under Wis. Stat. § 946.61. (ECF No. 34 at 8.) At some point after he was arrested, Fillyaw was patted down, and the search revealed a green bag with a green plantlike substance and a Smith and Wesson semiautomatic handgun in Fillyaw's front right pocket. (ECF No. 36, ¶¶ 26-27.) Police also ran an on-scene records check on Fillyaw, which showed Fillyaw was a convicted felon. (*Id.*, ¶ 29.)

   3. *Tenhaken's and Ozelie's Body Camera Videos*[1]

Tenhaken's body camera video starts with him standing in the third-floor stairwell talking to three individuals; however, there is no audio. A man in a red Adidas jacket pulls

---
[1] Fillyaw cites to several body camera videos in his response materials. Because Fillyaw was incarcerated when he submitted his response, he was unable to produce the videos. Accordingly, on January 6, 2022, the court ordered the defendants to file the videos Fillyaw cited to. The defendants provided nineteen videos contained on two DVDs, but the videos were not authenticated. Regardless, I will still consider the videos where relevant and appropriate in making its decision. The defendants clearly provided at least some of these videos to Fillyaw in discovery and did not challenge their lack of authentication. Moreover, as discussed below, the resolution of the case does not turn on the videos.

his phone out of his pocket and shows it to Tenhaken. A woman in a black coat pulls her gloves out of her pocket and shows them to Tenhaken. The third man, who is presumably Fillyaw, has his hands in his pockets, and it is unclear, what, if anything Tenhaken says to him. Fillyaw and the other two individuals then walk away from Tenhaken and head down the stairs. Tenhaken follows them. (ECF No. 50, Exhibit 1—Tenhaken BWC at 00:01-00:28.)

At this point, Tenhaken's audio turns on, and Tenhaken says into his radio, "grab the guy in the vest coming out, he's got something in his right-hand pocket." *Id.* at 00:29-00:40. As Fillyaw exits the door, another officer, presumably Ozelie, restrains Fillyaw placing a hand on his right arm. Fillyaw is clearly unable to disengage or pull away from Ozelie's grip. Tenhaken asks Fillyaw what he has in his pocket. Fillyaw asks why he is being stopped, and Tenhaken answers, "Because." Fillyaw tells the officers he is going to the store. Fillyaw is starting to become agitated and verbally loud, but not physically aggressive. Tenhaken asks, "What did you conceal in your pocket when I came into the hallway?" Fillyaw informs him he had a green bag that contained his property. He then asks the officers to please let him go, and that he does not consent to being detained. (*Id.* at 00:40-1:14.)

Fillyaw then begins to loudly demand that they let him go, and when he appears to adjust his position, Ozelie tells him not to pull away. Tenhaken moves to put Fillyaw's hands behind his back, and from the body camera angle, Fillyaw appears to fall forward. As he falls forward, one of the officers yells, "Get down, get down!" The video is obscured, so it is impossible to discern whether Fillyaw actually ran. However, the video does show that Fillyaw is immediately pushed into the snow. The officers yell at him to put his hands

5

behind his back, and Fillyaw states that he cannot breathe and tells them he is trying to comply. The video then becomes completely obscured and all that is left is the audio. Fillyaw keeps yelling that he cannot breathe and that he is not resisting. He also tells the officers that he is unable to put his hands behind his back as they are directing him because of the position he is in. (*Id.* at 1:15-3:11.)

Tenhaken then backs away from Fillyaw, and the visual is restored. Fillyaw is on the ground, covered in snow. The officers allow him to sit up, and Fillyaw's arms appear to be restrained behind his back. (*Id.* at 3:11-4:00) For the next several minutes, Fillyaw yells and protests his detainment, but does not appear to be physically resisting. The officers successfully place him in the back of a squad card. (*Id.* at 4:00-11:03.)

Around the four-minute mark, an officer informs Fillyaw that he is under arrest. The officers search Fillyaw and find a pistol. (*Id.* at 4:00-4:30.)

Ozelie's video is much shorter but provides a better angle of Fillyaw. The video shows that while Fillyaw is yelling and protesting his detainment, his body and facial expressions are relatively calm. However, even with the better angle, when Tenhaken attempts to put Fillyaw's hands behind his back, it is still unclear whether Fillyaw simply falls forward or attempts to run. Ozelie's video then cuts off while the officers are trying to secure Fillyaw. (ECF No. 50, Exhibit 2—Ozelie BWC at 0:45-1:25.)

4. *Fillyaw's Encounter with Steelow and Claudio*

According to Fillyaw, he was then taken to the hospital, where he was placed on a bed with his hands cuffed behind his back. (ECF No. 41 at 3.) Fillyaw admits to mouthing off to defendant Officer Steelow. (*Id.*) Fillyaw states that Steelow did not like what Fillyaw was saying so he "grab[bed] me by the face with one hand an [*sic*] by the neck with the other

6

and slammed my head back on the other side of the bed, while squeezing my mouth and choking me by the neck. He then holds a hand over my nose an [sic] mouth so I could not breath [sic]." (*Id.*)

After Fillyaw left the hospital, he was taken to a district station where Steelow interviewed him. (*Id.*) Fillyaw states that he was struggling to sit down in the interview chair because his hands were cuffed behind his back, so Steelow "used both his hands towards my groin area an [sic] forcefully pushed me into the chair." (*Id.*) Fillyaw refused to give fingerprints, so he was placed into a transport van for booking. (*Id.*) When he arrived at booking, he was pulled out of the van and "had my prints taken by force by four or more officers. My wrist was injured as well as my thumb." (*Id.*)

The defendants' version differs from Fillyaw's version. They state that Fillyaw was first taken to Milwaukee Police Department District 3, where he physically resisted officers' attempts to obtain fingerprints. (ECF No. 36, ¶ 31.) After Fillyaw was booked, he was taken to St. Joseph's Hospital. (*Id.*, ¶ 34.) The defendants assert that Fillyaw was handcuffed during his time at the hospital, and no one choked him while at the hospital. (*Id.*, ¶ 35.) The defendants admit "that the Plaintiff's head was controlled at the hospital." (*Id.*, ¶ 35.)

There is video of the incident at the hospital. Officers place Fillyaw in a hospital bed. Fillyaw is yelling but his body is calm. Two officers push him towards the back of the bed, and one claims that Fillyaw spit. Fillyaw verbally denies spitting, and because of the camera angle, it is unclear whether Fillyaw actually spit. The two officers then push Fillyaw down into the mattress, and again, because of the camera angle, it is unclear what is actually happening. Fillyaw states several times that he cannot breathe and says he is being choked.

7

The officers do appear to have Fillyaw's head restrained. (ECF No. 50, Exhibit 14—Claudio BWC 1 at 22:35-23:25.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003))

# ANALYSIS

   *1. Fillyaw's False Arrest Claims against Tenhaken and Ozelie*

Fillyaw claims that Tenhaken and Ozelie violated his Fourth Amendment rights when they falsely arrested him. If Tenhaken and Ozelie had probable cause to arrest Fillyaw, then Fillyaw's claim must be dismissed because "the existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714. Probable cause "requires something more than a hunch [but] does not require a finding that it was more likely than not that the arrestee was engaged in a criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Id.* "Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Id.* Courts must consider whether the "facts and circumstances, 'viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366 (2003) (internal citations omitted)).

There is a question of material fact as to whether Tenhaken and Ozelie had probable cause to arrest Fillyaw. The defendants first argue Tenhaken had probable cause because Tenhaken states that he saw Fillyaw with a bag full of suspected marijuana while Tenhaken was standing on the third floor. However, taking the facts in a light most favorable to Fillyaw, a reasonable factfinder could conclude that Tenhaken never observed Fillyaw from

9

the third floor or saw Fillyaw open his green bag. Fillyaw states the first time he encountered Tenhaken is when Tenhaken entered the third-floor stairwell from the third-floor hallway. The video also supports Fillyaw's version, as it begins with Tenhaken talking to Fillyaw and his two companions in the third-floor stairwell. Then Fillyaw and his friends leave, and Tenhaken follows them. As they are going down the steps, Tenhaken radios Ozelie to have him stop Fillyaw. This contradicts Tenaken's version of events, where Tenhaken states that Fillyaw was on the ground floor and exited the building after he noticed Tenhaken observing him on the third floor. It was then that he radioed Ozelie to detain Fillyaw. Thus, there is a question of fact whether Tenhaken ever saw inside Fillyaw's green bag.

The defendants argue that even if Tenhaken did not have probable cause based on his observation of the contents of the green bag, he had probable cause to arrest Fillyaw for resisting or obstructing an officer pursuant to Wis. Stat. § 946.61(1). The defendants state that Fillyaw was vigorously resisting them and attempted to flee. But there is a question of material fact as to whether Fillyaw was actually resisting. Fillyaw states he was not resisting and that his attempt to flee was really an attempt to adjust his position because he was in pain. The body camera videos are inconclusive, as they are partially obstructed. However, the videos do show that Fillyaw, while loudly protesting his arrest, does not appear to be vigorously physically struggling against the officers. Thus, a reasonable factfinder could conclude Fillyaw was not resisting.

However, even if it was clear that Fillyaw was resisting and had, in fact, attempted to flee, there is still a material question of fact that the officers had probable cause to arrest Fillyaw for a violation under Wis. Stat. § 946.61(1). In *Hardy v. City of Milwaukee,* No. 13-

10

CV-769, 2014 WL 2642756 (E.D. Wis. June 13, 2014), Judge J.P. Stadtmueller considered a similar situation. There, the plaintiff had actually fled officers, which resulted in a foot chase. *Id.* at *2. The officers had stopped the plaintiff based off of a tip from a neighbor that the plaintiff associated with the neighborhood drug dealer. *Id.* They had no additional evidence or indication that the plaintiff had drugs on his person or had otherwise committed a crime. *Id.* The court found that because there was a question of material fact as to whether the defendant police officers had reasonable suspicion to stop the plaintiff, there was a question of material fact as to whether the officers had probable cause to arrest the plaintiff for resisting under Wis. Stat. § 946.61(1). *Id.* at *10.

The court engaged in a thorough analysis of Wis. Stat. § 946.61(1). Beginning with the text of the statute, the court identified four elements:

> (1) Resistance or obstruction of an officer, occurring while the officer (2) was acting in official capacity and (3) with lawful authority, and (4) further that the act was done knowingly.

*Id.* The court concluded that the issue was whether the officers acted with lawful authority. *Id.* at *11. Lawful authority in this instance meant reasonable suspicion for stopping the plaintiff in the first place. *Id.* If the officers did not have reasonable suspicion to stop the plaintiff, then they did not have lawful authority, because "'[o]ne has an undoubted right to resist an unlawful arrest.'" *Id.* (quoting *United States v. Di. Re,* 332 U.S. 581 (1948)). However, if they did have reasonable suspicion to stop the plaintiff, then they had lawful authority to detain him, and the plaintiff fleeing amounted to a violation under Wis. Stat. 946.61(1), providing probable cause to arrest the plaintiff.

Here, as stated above, there is a question of material fact as to whether Tenhaken actually observed the contents of the green bag, and this fact is material because it speaks to

11

whether Tenhaken had reasonable suspicion to have Ozelie detain Fillyaw. Taking the facts in a light most favorable to Fillyaw, a reasonable factfinder could conclude that Tenhaken's first encounter with Fillyaw was in the third-floor stairwell. Because the video does not have audio at that point, it does not shed light on what Tenhaken knew about the contents of Fillyaw's pockets. According to Fillyaw, Tenhaken did not ask him about the contents of his pockets and had no way of knowing what was inside them. According to Tenhaken, he saw Fillyaw earlier shove a green bag full of suspected marijuana inside his pocket, but the only evidence of this is Tenhaken's declaration.

Thus, as in *Hardy*, there is a question of material fact as to whether Tenhaken and Ozelie had reasonable suspicion to stop Fillyaw. A factfinder could reasonably conclude that Tenhaken had no basis to have Ozelie detain Fillyaw. And if that's the case, then Tenhaken's and Ozelie's detainment of Fillyaw was unlawful, and Fillyaw had a right to resist them. The defendant's motion for summary judgment on the false arrest claim is denied.

   *2. Fillyaw's Excessive Force Claim against Steelow and Claudio*

Fillyaw asserts that Steelow and Claudio violated his Fourth Amendment rights when they choked him on the hospital bed. He also argues in his summary judgment materials that Steelow improperly used excessive force to have him sit in the interview chair. At screening, Fillyaw was allowed to proceed on an excessive force claim against Steelow and Claudio for two separate instances of excessive force—excessive force at the hospital and excessive force in forcibly taking Fillyaw's fingerprints. (Case No. 20-cv-861, ECF No. 9 at 4-5.) Fillyaw is limited to the scope of the screening order, *see Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013), and he

12

was not allowed to proceed on a claim for being forced to sit in an interview chair. And, in his summary judgment materials, Fillyaw explicitly states that it was four other unidentified officers, not Steelow and Claudio, who forcibly took his fingerprints. Because Fillyaw does not argue that Steelow and Claudio were responsible for the forcible taking of his fingerprints, I will grant summary judgment in the defendants favor only as to that claim.

However, I find that there is a question of material fact as to the excessive force claim that took place at the hospital. The court examines an excessive force claim under the Fourth Amendment's objective reasonableness standard. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* The court considers several relevant factors "including the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Id.* Ultimately, the court should "determine 'whether the force used to seize the suspect was excessive in relation to the danger he posed . . . if left unattended.'" *Id.* (quoting *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011)).

Taking the facts in a light most favorable to Fillyaw, a reasonable factfinder could conclude that Steelow and Claudio acted with excessive force when they restrained him on the hospital bed. The defendants do not provide much in the way of the defense, and simply deny that anyone choked Fillyaw. Also, the defendants did not offer any sort of affidavit or declaration from either Steelow or Claudio, instead citing to the answer to the complaint

13

when admitting that Fillyaw's head was controlled at the hospital. (*See* ECF No. 36, ¶ 35.) "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). The defendants do not offer much more than a blanket denial that Fillyaw was choked.

Fillyaw, on the other hand, has the benefit of the video, which raises a question of material fact. The video does not directly show what happened because the view is obstructed. It does show that Fillyaw was yelling, but his body was calm. It does not demonstrate conclusively that Fillyaw spit at an officer, though an officer can be heard saying Fillyaw spit at him. Fillyaw can also be heard saying he is being choked several times. Thus, a reasonable factfinder could conclude based on Fillyaw's version of the events and the video that Steelow and Claudio used excessive force at the hospital. Summary judgment is denied as to the excessive force claim that took place at the hospital.

3. *Qualified Immunity*

The defendants argue that even if the court finds there are questions of material fact, the court should nevertheless grant summary judgment in their favor because the defendants are entitled to qualified immunity for claims brough under § 1983. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 F. App'x 773, 775 (7th Cir. 2018).

As discussed above, I find that a reasonable jury could find that the defendants violated Fillyaw's Fourth Amendment rights. The only question remaining is whether operating under the law as it existed in February 2018, a reasonable officer would have

14

known that detaining Fillyaw without probable cause and using force for no reason against a detainee constituted a Fourth Amendment violation. Regarding Tenhaken and Ozelie, the defendants argue that "no caselaw precludes their decision to stop and question a subject in furtherance of investigating a drug transaction they personally observed in real time." (ECF No. 34 at 15.) While that may be true, there is established case law, specifically the *Hardy* case, that precludes arresting someone for resisting an officer where that resistance is lawful. Also, the United States Supreme Court in *United States v. Di. Re,* 332 U.S. 581 (1948) unequivocally gives a detainee the right to resist unlawful arrest.

Regarding Steelow and Claudio, the defendants argue that "there is no caselaw that would preclude an officer from controlling a detainee who is spitting or otherwise causing a disruption." (ECF No. 34 at 15.) However, it is well-established that using force for no reason on a detainee who is under an officer's control is excessive. *See Johnson v. Rogers,* 944 F.3d 966, 970 (7th Cir. 2019) (listing cases where qualified immunity was denied where officers used force against suspects who were already under the officers' control); *Jones v. Phillips*, Case No. 15-CV-51, 2016 WL 3255022 (E.D. Wis. June 13, 2016)

So, whether qualified immunity applies in both claims depends on whose story a reasonable factfinder believes. In analyzing whether qualified immunity applies, courts should not resolve the genuine issues of material fact in favor of the party seeking summary judgment. *See Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir 2014); *Brosseau v. Haugen*, 543 U.S. 194, 195 n. 2 (2004) (*per curiam*). Here, Fillyaw's version of events and the defendants' version of events are so different that I cannot determine at this stage whether qualified immunity applies. The defendants may revisit this question after a jury resolves the factual disputes.

15

*4. Effect of Heck v. Humphrey*

As noted in the screening order, where a plaintiff contends that he is arrested without probable cause, the validity of the conviction is generally not implicated, and therefore not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Case No. 20-cv-827, ECF No. 8 at 5.) However, there is an exception to this that came to light in the analysis of the defendants' summary judgment motion.

In *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), the Seventh Circuit Court of Appeals held that where a plaintiff's claim is contingent on the proposition that he did not resist an officer, and then he was subsequently convicted of resisting an officer, his § 1983 suit is barred by *Heck* because it "is incompatible with his conviction." The Seventh Circuit noted, however, that *Heck* only bars the § 1983 suit in so far that the claim is dependent on the proposition that the plaintiff resisted arrest. *Id.*

Currently, the state criminal case that resulted from Fillyaw's arrest on February 9, 2018, is on appeal in the Wisconsin state court of appeals. Fillyaw was convicted of possession of THC with intent to distribute; possession of a firearm while being convicted of a felony; and resisting an officer. He is contesting his conviction. (See https://wcca.wicourts.gov (case no. 2018CF00705)).

The fact that Fillyaw was convicted of resisting an officer is what implicates *Heck* here. As explained above, there is a material question of fact as to whether Fillyaw resisted an officer and/or was unlawfully detained, which could make his resistance lawful. Thus, Fillyaw's false arrest claim is dependent on the question of whether he unlawfully resisted Tenhaken and Ozelie. Under *Evans*, Fillyaw's conviction of resisting an officer, then, is implicated, and therefore is barred by *Heck*.

16

However, the *Evans* court, in applying *Wallace v. Kato*, 549 U.S. 384 (2007), noted that *Heck* does not require dismissal of the claim where the state criminal case is still pending. *Evans* 603 F.3d at 363. Instead, *Wallace* instructs that the claim should be stayed pending resolution of the state criminal case, including any appeal up to the state supreme court. *Id.* Should the state court reverse the conviction, then a plaintiff may proceed on his previously-barred §1983 claim. *Id.* However, if the state court affirms the conviction, then the § 1983 claim must be dismissed pursuant to *Heck*.

As stated at the outset, this case was originally two cases, with Fillyaw's false arrest claim filed as one case (Case No. 20-cv-827) and Fillyaw's excessive force claim filed as another case (Case No. 20-861). The court consolidated these cases on the defendants' motion. Given the fact that Fillyaw's other surviving claim is categorically not barred by *Heck*, *see Evans* 603 F.3d at 363, and for the sake of efficiency, the court will sever the cases. *See* Federal Rule of Civil Procedure 42(b). Case No. 20-cv-827 will be stayed pending resolution of Fillyaw's state criminal case. Once Fillyaw's state case is resolved, he should notify the court of the outcome, so the court may proceed accordingly. Case No. 20-cv-861 will proceed to trial on the remaining excessive force claim.

## CONCLUSION

I will deny the defendants' motion for summary judgment as to Tenhaken and Ozelie because there are questions of material fact as to whether they had reasonable suspicion to stop Fillyaw and whether they had probable cause to arrest him for resisting an officer. However, because Fillyaw's claim implicates his conviction, it will be stayed pursuant to *Heck* and *Wallace*. I will also deny the defendants' motion for summary judgment as to Steelow and Claudio for the excessive force claim in the hospital, but I will

17

grant the defendants' motion for summary judgment as to the excessive force claim relating to the forcible taking of fingerprints.

Finally, to promote efficiency, I will sever the two cases. Case No. 20-cv-827, which contains the claim against Tenhaken and Ozelie will be stayed pending resolution of Fillyaw's state criminal case. Case No. 20-cv-861, which contains the claim against Steelow and Claudio, will proceed to trial. The court will recruit counsel for Fillyaw for Case No. 20-cv-861. Once counsel is recruited, I will hold a status conference to discuss further scheduling.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 33) is **GRANTED IN PART** and **DENIED IN PART**. The Fourth Amendment excessive force claim as it relates to forcible fingerprinting is **DISMISSED**.

**IT IS FURTHER ORDERED** that Case No. 20-cv-827 and Case No. 20-cv-861 are **SEVERED**.

**IT IS FURTHER ORDERED** that Case No. 20-cv-827 is **STAYED** pending the resolution of Fillyaw's state criminal case.

**IT IS FURTHER ORDERED** that counsel will be recruited in Case No. 20-cv-816 to represent Fillyaw.

Dated at Milwaukee, Wisconsin this 30th day of March, 2022.

                BY THE COURT:

                NANCY JOSEPH
                United States Magistrate Judge